FILED
2006 Nov-14  PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOEY BATTLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:05-CV-1570-VEH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **MITCHELL GROCERY** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This Court has before it the July 3, 2006 motion of Defendant Mitchell Grocery Corporation ("Mitchell Grocery") for summary judgment as to Plaintiff Joey Battles's claims. (Doc. 20).   For the reasons set forth below, the Defendant's motion for summary judgment is due to be **DENIED IN PART** and **GRANTED IN PART** as to Plaintiff's federal discrimination and state law claims.

## I. Procedural History

Plaintiff Joey Battles ("Battles") commenced this action on July 21, 2005, by filing a complaint in this Court alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, and 42

1

U.S.C.A. § 1981a.  Battles also alleged the state law claims of invasion of privacy, assault and battery, outrage, and negligent retention.

Battles alleges in his complaint that he was subjected to unwelcome acts of sexual harassment by employees of Mitchell Grocery.  Battles contends that Mitchell Grocery subjected him to a sexually hostile work environment that discriminatorily altered the terms and conditions of his employment.  Battles asserts that he was forced to abandon his position against his will because of the alleged harassment.  Battles alleges that Mitchell Grocery invaded his privacy because  Mitchell Grocery ratified the alleged harassment by his co-workers and supervisors.  Battles also stated that Mitchell Grocery failed to take adequate steps to remedy the situation after it had been reported.

Battles asserts an assault and battery claim against Mitchell Grocery. Battles alleges that Mitchell Grocery acted with malice or reckless indifference when it ratified the conduct of Battles' coworkers and supervisors. Battles also claims that Mitchell Grocery had actual notice of numerous unwanted physical touchings in private places on Battles's body.  Battles contends that Mitchell Grocery outrageously and intentionally inflicted emotional distress upon him because he was subjected to abusive and harmful touching and sexually abusive, profane, insensitive, and unprofessional language.  In addition, Battles alleges Mitchell Grocery caused severe

emotional distress by ratifying his co-workers' commission of vulgar, explicit acts in his presence and by failing to take corrective action once notified of the harassing conduct. Battles also claims that Mitchell Grocery negligently retained co-workers and supervisors after Battles reported sexually harassing conduct that Mitchell Grocery should have known constituted sexual harassment and ratified.

On July 3, 2006, Mitchell Grocery filed a motion for summary judgment asserting: (1) that Battles cannot establish a prima facie case of gender discrimination because he cannot prove that Mitchell Grocery's conduct was based upon his gender; (2) that Battles cannot demonstrate the alleged behavior affected a term, condition, or privilege of employment; (3) that Battles cannot establish a hostile work environment sexual harassment claim because he cannot satisfy the fifth element of the prima facie case that Mitchell Grocery is liable for the alleged sexual harassment; and (4) that Battles cannot demonstrate liability based on invasion of privacy, assault and battery, outrage, or negligent retention.

Mitchell Grocery has submitted evidence[1] in support of its motion for summary judgment and filed a supporting brief on July 3, 2006. On July 26, 2006, Battles filed

---

[1]The Defendant submitted the depositions of Plaintiff Joey Battles with attached exhibits, Phillip Thomas, Robert Grizzard, and John Peters.

a brief and evidence[2] in opposition to Mitchell Grocery's motion for summary judgment. Mitchell Grocery filed a reply brief and evidence[3] on August 7, 2006.

## II. Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

---

[2]Plaintiff Battles submitted the declaration of Joey Battles with attachments of Battles's EEOC Charge, Joey Battles's statement given to the EEOC, and the EEOC's determination. Plaintiff also submitted the depositions of Seth Morrow and Allen Burgess.

[3]The Defendant submitted the depositions of Seth Morrow, Allen Burgess, and Ken Landrum.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 222 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

5

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment fo the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim. It simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegation, but must set

forth evidence of specific fact. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555. 561 (1992).

### III. Relevant Facts[4]

Mitchell Grocery is engaged in the wholesale grocery business and operates a

distribution facility in Albertville, Alabama. (Thomas Dep. 11-12). Battles was hired

by Mitchell Grocery on December 21, 2001. (Battles Dep. 149, 153-55). Battles was

a part-time, temporary employee on first shift. (Battles Dep. 149, 153-55). On May

24, 2002, Battles was transferred, with his permission, to a regular, full-time position

in the freezer department on second shift. (Battles Dep. 158). The second shift at the

Mitchell Grocery generally began at 5:30 p.m. and ended early the following

morning. (Battles Dep. 166-67). In July of 2002, Battles informed his team leader,

Robert Grizzard, of his intention to resign because of the long and late hours required

by his position.[5] (Battles Dep. 180-82; Grizzard Dep. 27). Mr. Grizzard convinced

Battles not to quit his employment at that time. (Battles Dep. 184).

When Battles moved to the freezer department, he was subjected to language

and conduct that was sexual in nature. (Battles Dep. 270-71). While on first shift, a

---

[4]Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the facts are presented in the light most favorable to the Plaintiff. Facts are undisputed unless otherwise expressly noted.

[5]Grizzard's employment designation is that of Team Leader. Based on discussion within the parties' papers, the court concludes that Grizzard exercised a supervisory role over Battles's employment.

co-worker, Adam Colquitt, told him that he must be giving the supervisor "head" to have received a compliment from the supervisor concerning his work performance. (Battles Statement 1).  After moving to second shift, Battles observed a co-employee, Chris Pounds, grab another employee, Oscar Burgess, from behind and ram his crotch into Burgess's buttocks. (Battles Dep. 250-252).   Battles's team leader, Robert Grizzard, observed this behavior and laughed. (Battles Dep. 252).  Prior to this event, Battles had seen similar behavior from other co-workers. (Battles Statement 2). Another time, Josh Colquitt came up behind Battles while Battles was unzipping the leg on his freezer pants and Colquitt began to ram his crotch into Battles's buttocks. (Battles Dep. 259).  Seth Morrow, Lee Henderson and Steve Henderson also went behind Battles while he was bent over and rammed their crotches into Battles's buttocks. (Battles Dep. 263, 265-66, 267-68).  On several occasions, Steve Henderson went behind Battles and firmly pressed his genital area against Battles's buttocks. (Battles Dep. 268-69).

During Battles's employment on the second shift, male employees repeatedly asked Battles to "suck their dicks," or if he "needed some peterciline [*sic*]." (Battles Statement 3).  Team leader Robert Grizzard, who supervised Battles, would tell employees they could "suck my cock." (Battles Dep. 205). Grizzard would also say he would give an employee "peterciline [*sic*]" if they complained about anything.

8

(Battles Dep. 205).  Battles heard language such as (1) "suck this;" (2) "suck my cock;" (3) "that's my bitch;" (4) "suck my cock bitch;" (5) "bend over bitch;" (6) "you/he needs some peterciline;" (7) "come and get some of this;" (8) "you're my bitch;" (9) "lick this;" and (10) "he likes to be fucked," on a regular basis. (Plaintiff's Exhibit 1B p. 9).  Most of these phrases were accompanied by the individual pointing toward their genital area or said while unzipping their freezer pants. (Plaintiff's Exhibit 1B p. 9).

Battles also witnessed conduct that was sexual in nature toward other employees.  Battles  saw employees force other employees to bend over the battery of a pallet jack while they rammed their genital areas into the bent employees' buttocks. (Plaintiff's Exhibit 1B p. 3).  On one occasion, Battles saw Jason Riddle being held around the legs by Josh Colquitt and around the arms by another employee. (Battles Dep. 277).  Colquitt was ramming his crotch into Riddle's crotch. (Battles Dep. 277).  Immediately after witnessing this event, Battles walked through the freezer and saw at least three sets of employees engaged in similar behavior. (Plaintiff's Exhibit 1B p. 2).  Battles also saw Steve Henderson unzip his freezer pants and make a reference to someone sucking Henderson's  penis. (Battles Dep. 278).  On another occasion, Battles saw Henderson reach into his underwear while making the same reference. (Battles Dep. 278).

In July of 2002, Battles spoke with his supervisor, John Peters, about behavior of a sexual nature occurring in the freezer department. (Battles Dep. 197-98). However, Mitchell Grocery had no policies regarding sexual harassment or regarding reporting sexual harassment.  During 2002, the training coordinator, Phillip Thomas, was responsible for the training of new employees. (Thomas Dep. 16-18).  After orientation, an employee would sign a checklist indicating that they attended orientation and what topics were discussed. (Thomas Dep. 18).  The orientation checklist that was in place when Battles was hired does not mention any policies other than those against theft, fighting, and drugs. (Thomas Dep. 20).  Mitchell Grocery does not have an employee handbook. (Thomas Dep. 21).  Mitchell Grocery has a training manual that is given to employees. (Thomas Dep. 21).  The training manual does not include information regarding workplace harassment that is either sexual or racial in nature. (Thomas Dep. 27).  Thomas did not mention sexual harassment during Battles's orientation in 2002. (Thomas Dep. 28, 29).

In early 2002, Mitchell Grocery employees were not informed that the company would not permit sexual harassment in the workplace. (Thomas Dep. 30).  Prior to a written sexual harassment policy drafted in the Fall of 2002, after Battles resigned, Mitchell Grocery did not have a written policy addressing workplace harassment. (Thomas Dep. 32).  In addition, no training was given to supervisors on how to

recognize sexual harassment or what actions management should take if they received a complaint of sexual harassment. (Thomas Dep. 34, 43, 48).

During the conversation in July, Battles told Peters that there was a lot of vulgar talk and also a lot of physical contact. (Battles Dep. 197-98). Battles described two types of conduct that were common in the freezer department: (1) one employee would come up to another employee from behind and grab his arms and another employee would grab his legs, pick him up, and "ram" the restrained employee's crotch; and (2) an employee would bend over to unzip his freezer pants and another employee would come up from behind and "ram" his crotch into the bent-over employee's buttocks. (Battles Dep. 198). The sexual actions were exclusively directed at male employees by other male employees. (Plaintiff's Exhibit 1A ¶ 4).

Battles did not provide Peters with the names of any individuals involved in these actions nor did he indicate to Peters that any of the physical contact had happened to him personally. (Battles Dep. 200-02). Peters did testify that Battles told him that "people were doing pretty much homosexual actions to each other and it made him uncomfortable" and that Peters had seen employees engage in this type of behavior while working in loading. (Peters Dep. 18, 28).

In response to his conversation with Battles, Peters spoke with some members of the freezer department and told them to stop the "horseplay". (Peters Dep. 19-20).

Peters did not have a meeting with the entire group of freezer employees at which he discussed the subject of Battles's concerns. (Peters Dep. 21). Peters reported Battles's complaint about the behavior to Peters's supervisor, Johnny Morton, and to the Human Resources Manager, Pat Allen. (Peters Dep. 21-22). Peters also told the team leader, Grizzard, to watch and make sure the conduct no longer occurred. (Peters Dep. 23-24). After Peters's meeting with the employees, Battles did not see the physical behavior continue to others as it had previously. (Battles Dep. 218). However, the sexual language continued on as before when Battles returned from his vacation in mid-July. (Battles Dep. 218).

After Battles's complaint to Peters, there were several incidents of physical behavior similar to that of which Battles had previously reported, though Battles did not report these incidents to anyone. (Battles Dep. 223, 225). After Battles complained to Peters, Steve Henderson came up behind Battles while he was working and pressed his genital area against Battles's buttocks. (Battles Dep. 234-35). Another incident involved a newspaper picture of Battles and his family that had been posted on the wall. (Battles Dep. 236). Lee Henderson wrote "FAG" on the picture above Battles head. (Battles Dep. 236-37). At the same time, Seth Morrow came up to Lee Henderson and began to rub his genital area against Lee's side while both men were staring at Battles and laughing. (Battles Dep. 237). In addition, after Battles

reported the incidents to Peters, Steve Henderson told Battles that anyone who thought about quitting would be dragged naked through the freezer. (Battles Dep. 240; Plaintiff's Exhibit 1B p. 6).

On August 12, 2002, Battles submitted his resignation to Grizzard without stating a reason. (Battles Dep. 170, 174; Grizzard Dep. 26-28).   At a later date, Mitchell Grocery was informed, through the EEOC, that Battles resigned because of overall treatment he had received at Mitchell Grocery and that the resignation occurred immediately after Lee Henderson told him to "suck his cock."  Following the receipt of Battles's charge of discrimination with the EEOC, in which Battles said that he had quit because of the continuing harassment, Mitchell Grocery made an unconditional offer to reinstate Plaintiff. (Battles Dep. 17).  Mitchell Grocery told Battles of their commitment to provide a harassment-free work environment. (Battles Dep. 17).  Battles rejected the offer. (Battles Dep. 22, 25, 100).  Thereafter, Battles filed the instant action with this court.

## IV. Applicable Substantive Law and Analysis

### Sexual Harassment

Battles asserts a sexual harassment hostile work environment claim.  A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Civil Rights Act of 1964, § 701 *et seq*. as amended, 42 U.S.C.A. § 2000 *et seq*.  To establish a hostile work environment claim, an employee must show: (1) that he belongs to a protected group; (2) that he has been subjected to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, [such as his/her sex]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  Mitchell Grocery argues that Battles's claim fails to establish three of these required elements.  It asserts that (1) the conduct was not based on sex, (2) it did not alter a term or condition of Battles' employment, and (3) that there is no basis for holding Mitchell Grocery liable.

**(1) Whether conduct is based on sex.**

The critical issue under Title VII is "whether members of one sex are exposed to disadvantageous terms and conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Serv.,* 523 U.S. 75, 80 (1998).  Title VII does not prohibit all verbal or physical conduct of an allegedly

14

harassing nature, but is directed at discrimination because of "sex." *Id*.  Furthermore, allegedly harassing behavior does not automatically amount to sexual discrimination because the words used have sexual content or connotations. *Id*. at 81.

Same-sex sexual harassment may be established (1) where the alleged perpetrator's behavior is motivated by actual homosexual desire for the plaintiff; (2) where the harassment is framed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility toward members of the same sex in the workplace; or (3) where the plaintiff offers direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed workplace. *Oncale,* 523 U.S. at 80-8.  However, the plaintiff must prove that the conduct at issue were not merely offensive sexual comments, but that the conduct amounts to actual discrimination because of sex. *Id*. at 81.

Mitchell Grocery argues that Battles did not contend that any of the other employees had a homosexual desire for him or a general hostility toward men.  There is a genuine issue of material fact as to whether the conduct was based on homosexual desire.  The record shows specific instances of language and physical conduct that is homosexual in nature and could evidence homosexual desire.  Battles contends that "[t]he conduct certainly evinces a sexual desire."  (Pl's Brief, P. 16).  Moreover, it is undisputed that the conduct occurred exclusively between males.  In addition, there

is a genuine issue of material fact as to whether the harassment is framed in such sex–specific and derogatory terms as to make it clear that the harasser is motivated by general hostility toward members of the same sex in the workplace. The behavior only occurred between the male employees of the freezer department and the verbal and physical conduct was framed in sex-specific terms. There is no evidence in the record that the conduct Battles described was ever directed toward a female. Therefore, there is a question as to whether the behavior was motivated by a general hostility to persons of the same sex. Based on the nature of the behavior of the males toward other males, there is a genuine issue of material fact whether the conduct was based on sex.

Mitchell Grocery also looks to the social context of the behavior that occurred in order to determine whether the behavior was based on sex. In *Oncale*, the Supreme Court urges other courts to use "common sense" and "appropriate sensitivity to the social context" to distinguish between "simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." 523 U.S. at 82. Mitchell Grocery discusses the Supreme Court's statement in *Oncale* that "a professional football player's working environment is not severely or pervasively abusive, for example if the coach smacks him on the buttocks as he heads on to the field." *Id*. at 81.

16

The situation in this case is much different and can be distinguished from *Oncale*. Following the rationale in *Oncale*, it is necessary to examine the social context in which the allegedly harassing conduct occurs. The social context in question in this case is a freezer department in a grocery store as Battles's work environment, not a football field. The kind of work performed in the freezer department can also be differentiated from a football game where players expect to run into one another. In addition, the slapping of another player's buttocks is a much less intrusive touch than co-workers ramming their crotches into one another. Finally, a football player has a reasonable expectation to believe he might be smacked on the buttocks at work whereas a worker in a freezer department has no reasonable expectation that other workers will ram their crotches into his buttocks.

Mitchell Grocery also argues that vulgar expressions are "commonplace in certain circles" particularly when men are speaking with other men and that using this language has no connection to the sexual acts to which they make reference even if accompanied by crotch-grabbing gestures. *Johnson v. Hondon, Inc.*, 125 F.3d 408, 412 (7th Cir. 1997). However, the behavior in this case can be distinguished from *Johnson*, which is not binding authority. Though vulgar language is an issue in this case, employees ramming their crotches into one another's buttocks amounts to more than "crude language and brief joking contact among men." *Id*. Therefore, a genuine

17

issue of material fact exists as to whether a reasonable person in the plaintiff's position would find use of vulgar language and repeated acts of male co-workers rubbing their crotches against other co-workers' buttocks to be based on the sex of the employee and whether the behavior was severely hostile or abusive so as to amount to more than simple teasing or roughhousing among members of the same sex.

### (2) Whether Battles' terms and conditions of employment were altered.

Title VII is violated when the workplace is permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986)).  Establishing that harassing conduct is sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. *Id.* at 21-22.

For the subjective component, an employee must demonstrate that he actually perceived the environment to be abusive. *Morgan v. Fellini's Pizza*, 64 F. Supp. 2d 1304, 1310 (N.D. Ga. 1999).  Courts consider a number of factors in determining whether this element is satisfied, including (1) the frequency of the discriminatory

conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes  with an employee's work performance. *Id*. (quoting *Harris*, 510 U.S. at 223).  In order to fulfill the objective portion, the environment must be one that "a reasonable person would find hostile or abusive" and that "the victim...subjectively perceive[s] to be abusive." *Harris*, 510 U.S. 17 at 21.  In addition, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all of the circumstances.'" *Oncale*, 523 U.S. at 81(citing *Harris*, 510 U.S. at 23.)

There is a genuine issue of material fact in the case at bar as to whether the atmosphere rises to the level of a work environment so filled with sexual remarks and physical actions that it altered the terms and conditions of Battles's employment. Battles has provided evidence that he found the environment to be abusive, as is reflected by his report of the conduct to his supervisor when he was under no duty to report the behavior under company policies. (Thomas Dep. 32). Battles supplies evidence that the discriminatory conduct was frequent in nature. There is also evidence, based on his discussion with Peters, that Battles found the behavior severe and physically threatening or humiliating. (Peters Dep. 18, 28).

Battles points to evidence that shows that the physical acts and language of the

other employees made it harder for him to do his job. (Battles Dep. 215-217). Battles has also shown that the conduct made it difficult to go to work each day and caused him stress and depression. (Battles Dep. 215-217). Though Battles does not expressly state that he was required to perform any of the alleged acts or that his job was in any way threatened based on his response or participation in the alleged behavior, it is not clear that the pervasiveness of the activity did not affect his work performance.

Mitchell Grocery argues that Battles's evidence of a physical touching and crude language do not rise to the level of severe and pervasive activity and that it was nothing more than juvenile behavior. In support of their argument, Mitchell Grocery cites *Shafer v. Kal Kan Foods Inc.*, 417 F.3d 663 (7th Cir. 2005). As a Seventh Circuit case, *Shafer* is not binding on the court and, furthermore, can be distinguished from the case at bar. *Shafer* deals with employee-employee sexual assaults that amount to tortious misconduct which could have been handled under state law. *Id*. at 667. However, the Seventh Circuit found that the employee had not given management sufficient notice of the misconduct and that there was not any reason for Kal-Kan to know of the employee's behavior. *Id*. at 665-66. In addition, the Seventh Circuit acknowledged that while this behavior could be considered severe, Dill picked on either sex, so there was no discrimination based on sex. *Id*. at 667. Therefore, this case is not on point and does not advance Mitchell Grocery's position.

Mitchell Grocery also cites *Davis v. Baraco Electrical Construction Co.*, 2000 WL 33156436 (S.D. Ala. 2000) in support of its position. In *Davis*, summary judgment was granted for the employer in a same sex harassment case involving daily sexual comments and several instances of physical contact.  In *Davis* the defendant touched the plaintiff's knee in a "suggestive manner" several times and made comments to the plaintiff such as "hey, handsome, come here and sit in my lap" and "can I play with your hole?" *Id*. at 2. Battles's evidence of his male coworkers "ramming" their genitals into other workers' buttocks or genitals is more than a slight physical contact such as the contact found in *Davis*.   In addition, in *Davis* the Plaintiff was only employed with the alleged harasser for a period of ten days while Battles was employed by Mitchell Grocery in these conditions for over a year. Furthermore, the conduct in Battles's case was more pervasive and severe than that found in *Davis* in which the plaintiff was touched on the knee "suggestively" a couple of times. Therefore, the Court finds a genuine issue of material fact as to whether a reasonable person would find the behavior so severe and pervasive as to alter the terms and conditions of Battles's employment.

### (3) Whether Mitchell Grocery can be held liable under Title VII.

When harassment is conducted by co-workers, a plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of

the harassment and failed to take immediate and appropriate corrective action. *Watson v. Blue Circle*, 324 F.3d 1252, 1259 (11th Cir. 2003) (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000)).  Actual notice is established by showing that management knew of the harassment. *Id*. When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established. *Id*. Constructive notice is established when the harassment was so severe or pervasive that management should have known about it. *Id*.

The Eleventh Circuit has found the following factors to be relevant when determining whether an employer had constructive notice: "(1) the remoteness of the location of the harassment as compared to the location of management; (2) whether the harassment occurs intermittently over a long period of time; (3) whether the victims were employed on a part time or full-time basis; and (4) whether there were only a few, discrete instances of harassment." *Miller v. Kenworth*, 277 F.3d 1269, 1278-79 (11th Cir. 2002) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997).

Since Battles reported the alleged harassment to supervisors, there is a question of material fact as to whether the employer had actual notice that the conduct was

22

occurring even in the absence of a formal sexual harassment policy. Though Battles acknowledges that his complaint to his supervisor only included general concerns regarding "vulgar talk" and "behavior in a sexual nature," there was no procedure in place within the company for reporting sexual harassment. (Battles Dep. 197-98, Thomas Dep. 32). Mitchell Grocery did not have a sexual harassment policy or educate its supervisors or employees on the subject. (Thomas Dep. 32, 34, 43, 48). Since there was no reporting mechanism in place, Battles would not have known how specific he needed to be in order to make a complaint, and he was not required to do so by company policy. However, Battles did not report the fact that the conduct was ongoing after Peters spoke with the freezer team and a genuine question exists as to whether Mitchell Grocery had knowledge that the alleged harassment was still occurring.

Furthermore, there is also a genuine issue of material fact as to whether the defendant knew or should have known that the behavior continued after Peters spoke with several members of the freezer department regarding "horseplay" at work. In addition, evidence exists that Grizzard, who acted in a supervisory role, was present during the alleged harassment and was usually near the location where the harassment occurred. Furthermore, the evidence shows that the conduct occurred many times during the year in which Battles worked in the freezer department. Though Battles did

23

not make further reports to Mitchell Grocery that the conduct was still occurring, a question of material fact does exist as to whether they should have known the conduct had not ceased based on their failure to conduct any investigation to be sure the situation had been remedied.

The evidence also presents a question as to the adequacy of the subsequent remedial measures taken by Mitchell Grocery to prevent further inappropriate behavior.   A genuine issue of material fact exists as to whether Mitchell Grocery took appropriate corrective action based on the evidence that the behavior did not cease after Peters spoke to some of the workers.  No investigation was conducted by Mitchell Grocery after the conduct was reported and there was no follow up with the employees to determine whether the activity was ongoing.  Though Battles stated that the physical conduct ceased for a period of time immediately after his discussion with Peters, the supervisors themselves did not attempt to discover whether the behavior had ceased.  There are genuine issues of material fact as to whether Mitchell Grocery had actual or constructive notice of the alleged harassment  and whether the company took immediate remedial action that ended such behavior.

Since genuine issues of material fact have been found regarding whether the conduct was based on sex, whether the alleged harassment altered a term or condition of Battles's employment and whether Mitchell Grocery can be held liable for such

conduct,  Mitchell Grocery's motion for summary judgment as to Battles's Title VII sexual harassment claim is due to be **DENIED**.

## Constructive Discharge

Battles alleges that the environment he worked in was so hostile and abusive that Battles was forced to abandon his position against his will.  "A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person [in the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 978 (11th Cir. 2003) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)).  In *Pennsylvania State Police v. Suders*, 524 U.S. 129, 124 S.Ct. At 2342, 159 L.Ed.2d 204 (2004), the United States Supreme Court set forth the elements of a constructive discharge under Title VII:

> To establish constructive discharge, the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response.

*Suders*, 124 S.Ct. at 2347.  "Mere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." *Hockman v. Westward Comm., LLC*, 122 Fed. Appx. 734 (5th Cir. 2004).

Battles presents evidence that he reported his co-workers' and supervisor's allegedly harassing behavior to Peters. After the report,  Peters discussed the matter

with some of the employees that worked in the freezer department. (Battles Dep. 197-98, Peters Dep. 19-20).   Battles acknowledges that the physical behavior ceased for a few days after Peters spoke with the co-workers, and that the use of crude language decreased. (Battles Dep. 218).   However, Battles presents evidence that there were incidents involving crude language and physical touching after Peters spoke with some of the employees. (Battles Dep. 223). However, Battles did not report these additional incidents. (Battles Dep. 225).   Battles turned in his resignation a month after his meeting with Peters. (Battles Dep. 170). At the time of Battles's departure, there was no harassment policy in place that would guide the actions of management and create a harassment-free environment. (Thomas Dep. 32).   Mitchell Grocery asked Battles to return to work in a harassment-free environment and Battles rejected this offer. (Battles Dep. 17, 22, 25, 100).

Upon review of the record, there is a genuine question of material fact as to whether Battles's working conditions at Mitchell Grocery were so intolerable that a reasonable person in Battles' position would have been compelled to resign.   In addition, a genuine issue of material fact exists as to whether this behavior rises to a level of an aggravating factor that justifies departure.   Battles has presented evidence that the behavior was crude and offensive and that it did not cease after management had been notified.   A reasonable jury could conclude that the nature of the conduct

sustained by Battles was more than mere harassment and intolerable enough to justify Battles's departure. In addition, a question of material fact exists as to whether Mitchell Grocery had adequate notice of the alleged harassment. Therefore, Mitchell Grocery's motion for summary judgment as to Battles' constructive discharge claim is due to be **DENIED**.

**State Law Claims**

### Invasion of Privacy and Assault and Battery

Battles alleges in his complaint an invasion of privacy claim and an assault and battery claim against Mitchell Grocery.[6] Battles claims that his privacy was invaded by his co-workers and supervisors when they made sexually explicit comments about him and touched him in an unwanted and sexual manner. In addition, Battles alleges that his co-workers' and supervisors' unwanted touching constitutes an assault and battery. Battles claims that Mitchell Grocery authorized, ratified, and/or condoned the actions of its employees, which amounted to an invasion of Plaintiff's privacy.

The Alabama Supreme Court recognizes that the invasion of privacy tort consists of four distinct wrongs: (1) intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and (4)

---

[6]Defendant Mitchell Grocery has moved for summary judgment as to all claims against it.

the appropriation of some element of the plaintiff's personality for a commercial use. *See Phillips v. Smalley Maintenance Servs.*, 435 So.2d 705, 708 (Ala. 1983). Plaintiff Battles's action for invasion of privacy is premised upon the species of invasion known as a wrongful intrusion into one's private activities. The Alabama Supreme Court has defined the tort as the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Phillips*, 435 So.2d at 705; Restatement (Second) of Torts § 652B (1977). To succeed on a claim alleging invasion of privacy relating to sexual harassment, a plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame or humiliation. *See Ex parte Atmore Community Hospital*, 719 So.2d 1190, 1194 (Ala. 1998).

Battles also alleges in his complaint an assault and battery claim against Defendant Mitchell Grocery. Under Alabama law, an "assault" is defined as "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Wood v. Cowart Enterprises, Inc.*, 809

So.2d 835, 837 (Ala. 2001)(quoting *Western Union Tel. Co. V. Hill*, 150 So. 709, 710 (Ala. 1993)).  In a civil action, to establish a claim for battery, a plaintiff must show "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Wood*, 809 So.2d at 837; *See also Ex parte Atmore Community Hospital*, 719 So.2d 1190 (Ala. 1998).  An actual injury to the body is not a necessary element of a civil assault and battery. *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala. 1986).

Mitchell Grocery asserts that, even assuming Battles can satisfy the initial elements of his claims for invasion of privacy and assault and battery, Mitchell Grocery is not liable for their employees' alleged conduct.  "The law in Alabama is well settled that an employer is not liable for the intentional acts of its employee unless the acts were committed within the scope of the employee's employment or were done to further the interests of the employer." *East Ala. Behavioral Medicine P.C. v. Chancey*, 883 So.2d 162, 166 (Ala. 2003).  Mitchell Grocery has presented evidence that its employees' conduct was personal to them and was neither condoned by the employer nor within the scope of their employment.  Alabama courts have held that sexual misconduct is personal to the employee and is outside of the scope of employment. *Joyner v. AAA Cooper Transp.*, 477 So.2d 364 (Ala. 1985)(holding that

a manager's attempt to force other employees to perform sexual acts was not in furtherance of the company's business).  Under Alabama law, "an employer is not liable under the doctrine of respondeat superior when the employee acts for his or her own personal gain and not in furtherance of the employer's business." *Doe v. Swift*, 570 So.2d 1209, 1213 (Ala. 1990); *Solmica of Gulf Coast, Inc. V. Braggs*, 285 Ala. 396, 232 So.2d 638 (1970).  As a matter of law, the Court finds that Mitchell Grocery is not liable under the doctrine of respondeat superior.

In addition to vicarious liability under the doctrine of respondeat superior, "an employer can also be held liable for the unlawful acts of its employee if the employer ratifies those acts." *Potts v. BE&K Constr. Co.*, 604 So.2d 398, 400 (Ala. 1992).  "An employer ratifies an act when (1) it expressly adopts the employee's behavior or (2) it implicitly approves the behavior." *Id*. at 400.  "Acquiescence or ratification requires full knowledge or means of knowledge of all material facts."  *Id*.  Furthermore, "[a]n employer's failure to stop the tortious conduct after it learns of the conduct will support an inference that the employer tolerated the conduct." *Id*. "An employer cannot be said to have ratified an employee's conduct when the employer, upon learning of an employee's conduct, which was not in the scope of the employee's employment, gives instructions calculated to prevent a recurrence." *Joyner*, 477 So.2d at 365 (after an employee's homosexual advances to another employee were reported

to the employer, the employer conducted an investigation and informed the offending employee that if another complaint of this nature came to the employer's attention, the offending employee would be laid off and a full-scale investigation conducted.)

Mitchell Grocery asserts that Battles did not provide Mitchell Grocery with full knowledge of the facts regarding the alleged sexual harassment and that the conduct continued after Mitchell Grocery took steps to stop the activity. Battles provided evidence that he reported the alleged sexual harassment to Peters. Mitchell Grocery asserts that, after Battles's report, Peters instructed the workers not to engage in any more "horseplay." It is undisputed that Peters spoke to some of the freezer workers, including Grizzard, about the behavior. Battles contends that Peters's discussion with some of the employees was not effective and that Peters's actions were not adequate because he did not speak with the entire freezer division. However, Battles did not report that the alleged harassment was ongoing until some time after he left Mitchell Grocery.

The Court finds that there is no genuine issue of material fact as to whether Mitchell Grocery ratified the conduct of its employees, since it did not have full knowledge or means of knowledge of all material facts. In addition, since Mitchell Grocery took steps to prevent a recurrence of the alleged harassment, it cannot be said to have ratified the employees' conduct. Therefore, Mitchell Grocery's motion for

summary judgment as to Battles' invasion or privacy claim and assault and battery claim is due to be **GRANTED**.

### Outrage

Battles alleges that Mitchell Grocery outrageously and intentionally inflicted emotional distress upon Battles by subjecting him to abusive and harmful touching and by using sexually abusive, profane, insensitive and unprofessional language toward the plaintiff.  In addition, Battles claims Mitchell Grocery caused the Battles severe emotional distress by committing vulgar, explicit acts in his presence and by failing to take corrective action once notified of the alleged harassment.

Under Alabama law, in order for a plaintiff to prevail on a claim of outrage, the plaintiff must prove (1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. *Callens v. Jefferson County*, 769 So.2d 273, 281 (Ala. 2000) (citing *American Road Serv. Co. v. Inmon*, 394 So.2d 361 (Ala. 1980); *Jackson v. Alabama Power Co.*, 630 So.2d 439 (Ala. 1993)).  In *American Road Service Co. v. Inmon*, the  court explained that by the second element, it was referring to "conduct so outrageous in character and so extreme in degree as to go beyond all possible

32

bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." 394 So.2d at 365.

The Alabama Supreme Court has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment. *Id*. *See Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041 (Ala. 1993). The Alabama Supreme Court has limited the outrage cause of action to egregious circumstances. *Id.* The court has found that there was sufficient evidence to present a jury question in three cases involving corporate defendants, each of which involved the manner in which the company conducted its business. *See Levite Undertakers Co. v. Griggs*, 495 So.2d 63, 65 (Ala. 1986) (question of mental suffering found where defendant undertaker refused to release body to plaintiff wife until she paid for services); *National Security Fire & Casualty Co. v. Bowen*, 447 So.2d 133, 138 (Ala. 1983) (finding question of outrage existed when defendant's agents used threatening behavior in the attempt to force plaintiff to drop his claim); *Ridout's-Brown Service, Inc. v. Holloway*, 397 So.2d 125, 126-27 (Ala. 1981) (finding evidence of outrageous conduct by defendant funeral director's false statement that the body was in an unviewable condition to prevent expense from actually preparing the body for viewing).

33

In *Busby v. Truswal Systems Corp.*, the court found that summary judgment for the defendant corporation was proper because the plaintiffs' initial complaints were too generalized to demonstrate that their supervisor's conduct was so outrageous as to go beyond all possible bounds of decency, because the plaintiffs did not allow time for defendant to correct the situation after detailing their complaints so the corporation could not be held liable as having ratified the supervisors conduct, and based on the fact that the supervisor was not acting to further the defendant corporations' business. 551 So.2d 322, 327-28 (Ala. 1989). *See also McIssac v. WZEW-FM Corp.*, 495 So.2d 649, 651 (Ala. 1986) (holding that evidence of her supervisor's personal advances did not evidence severe emotional distress and were "mere insults, indignities, threats [or] annoyances" which the law will not hold one liable in tort).  In the case at bar, Plaintiff Battles gave his supervisor a generalized account of the alleged sexual harassment that was occurring in the freezer department. He did not allege specific instances or specific persons who were performing the acts. Plaintiff also did not tell his supervisor that the sexual harassment was being done to him. In addition, the alleged sexual harassment by the employees and supervisors was not in furtherance of company business.

Mitchell Grocery was not given sufficient information to show that they knew the alleged sexual harassment was egregious in nature and, therefore, did not ratify

34

outrageous conduct.  Therefore, the Court finds there is no genuine issue of material fact as to whether Mitchell Grocery outrageously and intentionally inflicted emotional distress upon Battles by subjecting him to abusive and harmful touching and by using sexually abusive, profane, insensitive and unprofessional language toward the plaintiff. Mitchell Grocery's motion for summary judgment as to Battles' outrage claim is due to be **GRANTED**.

### Negligent Retention

Battles alleges that Mitchell Grocery negligently retained employees and supervisors after Battles and others reported their sexually harassing conduct. Alabama law requires an employer to "use due care to avoid the ...retention of an employee whom [the employer] knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer." *Brown v. Vanity Fair Mills, Inc.*, 277 So.2d 893, 894 (Ala. 1973).  For a master to be held liable for its servant's incompetency, it must be affirmatively shown that, had the master exercised due and proper diligence, the master would have learned of incompetency. This showing may be done by showing specific acts of incompetency and showing that they were brought to the knowledge of the master, or by showing them to be of such a nature, character and frequency that the master,

in exercise of due care, must have had notice of them. *Mardis v. Robbins Tire &*

*Rubber Co.*, 669 So.2d 885 (Ala. 1995).  To recover for negligent retention in

Alabama, a plaintiff must show breach of that duty and that such breach proximately

caused the plaintiff's injury. *Patterson v. Augat Wiring Systems, Inc.*, 944 F. Supp.

1509, 1529 (M.D. Ala. 1996). Isolated incidents of negligence by the employee will

not suffice to create a duty to terminate the problem employee.

> Negligence such as unfits a person for service, or such as renders it negligent
> in a master to retain him in the employment, must be habitual, rather than
> occasional, or of such a character as to render it imprudent to retain him in
> service.   A single exceptional act will not prove a person incapable or
> negligent.

*Bank of Montgomery v. Chandler*, 39 So. 822, 828 (Ala 1905).  Battles has presented

evidence that he informed Mitchell Grocery of the alleged harassment. However,

Battles did not tell Mitchell Grocery that the acts were being performed on him or the

names of persons performing the acts. Therefore, Mitchell Grocery did not have

sufficient information on which to discipline individual employees that were involved

in the incidents. The Court finds that there is no genuine issue of material fact as to

whether Mitchell Grocery negligently retained Battles's alleged harassers.  Mitchell

Grocery's motion for summary judgment as to Battles's negligent retention claim is

due to be **GRANTED**.

## V. Conclusion

For the reasons set forth above, Mitchell Grocery's motion for summary judgment as to Battles's federal discrimination and state law claims is due to be **DENIED IN PART** and **GRANTED IN PART**.

**DONE** and **ORDERED** this 14th day of November, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge